**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No.:**

**DYLAN HARRIS, Individually and For Others Similarly Situated,**

**Plaintiff,**

**v.**

**WESTMORELAND ROSEBUD MINING LLC**

**Defendant.**

# COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Dylan Harris (Harris) brings this collective action to recover unpaid wages and other damages from Westmoreland Rosebud Mining LLC (Westmoreland).

2. Westmoreland employed Harris as one of its Hourly Employees (defined below).

3. Westmoreland pays Harris and the other Hourly Employees by the hour.

4. Harris and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. But Westmoreland does not pay Harris and the other Hourly Employees for all their hours worked, including overtime hours.

6. Instead, Westmoreland requires Harris and the other Hourly Employees to put on safety gear and equipment necessary to perform their job duties and participate in safety and production meetings, while on Westmoreland's premises, "off the clock." (Westmoreland's "off the clock policy").

7. And Westmoreland rounds Harris's and the other Hourly Employees' hours to reflect only their prescheduled shifts, even when they work more (Westmoreland's "rounding policy").

8. Finally, Westmoreland pays Harris and the other Hourly Employees non-discretionary bonuses, including safety bonuses and sign on bonuses, as well as shift differentials, that Westmoreland excludes from these employees' regular rates of pay for overtime purposes (Westmoreland's "bonus pay scheme").

9. Westmoreland's off the clock policy, rounding policy, and bonus pay scheme violate the Fair Labor Standards Act (FLSA) by failing to compensate Harris and the other Hourly Employees at rates of at least 1.5 times their true regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over Westmoreland because Westmoreland maintains its principal place of business in Colorado.

12. Venue is proper because Westmoreland maintains its principal place of business in Lone Tree, Colorado, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Westmoreland employed Harris as a welder from approximately June 2018 until September 2025.

14. Throughout his employment, Westmoreland paid Harris under its off the clock policy, rounding policy, and bonus pay scheme.

15. Harris's written consent is attached as **Exhibit 1**.

16. Harris brings this collective action on behalf of himself and similarly situated Westmoreland employees.

17. The putative FLSA collective is defined as:

> **All hourly Westmoreland employees who worked during the last three years through final resolution of this action (the "Hourly Employees").**

18. Westmoreland is a Delaware limited liability company headquartered in Lone Tree, Colorado.

19. Westmoreland may be served with process through its registered agent: **Corporation Service Company, 26 W. Sixth Ave., Helena, Montana 59624**.

## FLSA Coverage

20. At all relevant times, Westmoreland was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

21. At all relevant times, Westmoreland was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

22. At all relevant times, Westmoreland was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

23. At all relevant times, Westmoreland had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

24. At all relevant times, Harris and the other Hourly Employees were Westmoreland's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

25. At all relevant times, Harris and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

26. Westmoreland owns and operates "[t]he 25,000-acre Rosebud Mine … [which] produces 6-8 million tons annually—enough to power 1 million typical U.S. homes."[1]

27. "Nearly all of this production is supplied under long-term contracts to the adjacent Colstrip Power Station."[2]

28. To meet its business objectives, Westmoreland employs workers, including Harris and the other Hourly Employees, to extract and process coal.

29. For example, Westmoreland employed Harris as a welder in the Rosebud Mine from approximately June 2018 to September 2025.

30. Harris's job duties included repairing and welding mine equipment, including jerry lines and hoist chains.

31. Throughout his employment, Harris regularly worked more than 40 hours in a workweek.

32. Harris typically worked approximately 8.5 hours a day and 5 to 6 days a week (42.5 to 51 hours a workweek) "on the clock."

33. Likewise, the other Hourly Employees work 45 to 50 hour a week schedules, "on the clock."

34. And Harris and the other Hourly Employees record their "on the clock" hours worked via Westmoreland's timekeeping system.

---

[1] https://westmoreland.com/present/ (last visited January 27, 2026).
[2] *Id.*

35. But Westmoreland subjects Harris and the other Hourly Employees to its rounding policy.

36. Specifically, Westmoreland requires Harris and the other Hourly Employees to record working only their prescheduled shifts each workday, even when they actually work more, which results in an undercounting of their actual hours worked.

37. Westmoreland implemented this rounding policy for its own primary benefit, to the detriment of Harris and the other Hourly Employees.

38. For example, Westmoreland required Harris to record working from 6:00 to 2:30 each workday.

39. Additionally, under its off the clock policy, Westmoreland requires Harris and the other Hourly Employees to prepare and put on protective gear, such as hard hat, steel toed boots, safety glasses, and meet with their counterparts on the outgoing shift to determine and discuss production issues for the upcoming workday, including what equipment was broken down, while on Westmoreland's premises, off the clock, and without compensation.

40. This took Harris and the other Hourly Employees approximately 20 to 30 minutes each workday.

41. Harris and the other Hourly Employees could not perform their principal job duties in accordance with Westmoreland's policies, procedures and expectations without this safety gear, and meeting participation.

42. Indeed, much of the gear Harris and the other Hourly Employees utilized is mandated by federal regulation. *See*, 29 C.F.R. § 1910.132; 30 C.F.R. § 77, *et seq*.

43. And determining from employees coming off shift what issues needed to be addressed and in what order was a required and integral part of his job as a welder.

44. The donning of safety gear and meeting participation are therefore integral and indispensable work duties for Harris and the other Hourly Employees.

45. Additionally, Westmoreland does not pay Harris and the other Hourly Employees at the required premium overtime rates for all hours worked in excess of 40 in a workweek.

46. Instead, Westmoreland pays Harris and the other Hourly Employees under its bonus pay scheme.

47. Specifically, Westmoreland agrees to pay and subsequently pays Harris and the other Hourly Employees non-discretionary bonuses, such as sign on and safety bonuses, as well as shift differentials, based on fulfilling Westmoreland's criteria.

48. But Westmoreland excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes when they work more than 40 hours in a workweek the bonuses and/or shift differentials are earned.

49. For example, Westmoreland paid Harris safety bonuses, based on fulfillment of its criteria, throughout his employment approximately each quarter, but excluded these safety bonuses from Harris's regular rate of pay for overtime purposes.

50. While exact job titles and duties may differ, Westmoreland subjects Harris and the other Hourly Employees to the same or similar bonus pay scheme, which fails to pay them overtime of at least 1.5 times their true regular rates of pay for hours worked in excess of 40 in a workweek.

51. Thus, under its rounding policy, off the clock policy, and bonus pay scheme, Westmoreland does not pay Harris and the other Hourly Employees premium overtime wages at the required rates—based on all remuneration—for all hours they work in excess of 40 in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

52. Harris brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

53. Like Harris, the other Hourly Employees are victimized by Westmoreland's rounding policy, off the clock policy, and/or bonus pay scheme.

54. Other Hourly Employees worked with Harris and indicated they were paid in the same or similar manner under Westmoreland's rounding policy, off the clock policy, and/or bonus pay scheme.

55. Based on his experience with Westmoreland, Harris is aware Westmoreland imposed its rounding policy, off the clock policy, and bonus pay scheme on other Hourly Employees.

56. The Hourly Employees are similarly situated in the most relevant respects.

57. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

58. Therefore, the specific job titles or locations of the Hourly Employees do not prevent collective treatment.

59. Rather, Westmoreland's rounding policy, off the clock policy, and bonus pay scheme render Harris and the other Hourly Employees similarly situated for the purpose of determining their entitlement to overtime wages at the required rates for all overtime hours worked.

60. Westmoreland's records reflect the number of hours the Hourly Employees worked "on the clock" each week.

61. Westmoreland's records also show it paid the Hourly Employees non-discretionary bonuses and shift differentials.

62. Westmoreland's records further show it excluded these non-discretionary bonuses and shift differentials from their regular rates of pay for overtime purposes.

63. The back wages owed to the Hourly Employees can therefore be calculated using the same formula applied to the same records.

64. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Westmoreland's records, and there is no detraction from the common nucleus of liability facts.

65. Therefore, the issue of damages does not preclude collective treatment.

66. Harris's experiences are therefore typical of the experiences of the other Hourly Employees.

67. Harris has no interest contrary to or in conflict with the other Hourly Employees that would prevent collective treatment.

68. Harris has an interest in obtaining the unpaid wages owed to the other Hourly Employees under federal law.

69. Harris and his counsel will fairly and adequately protect the interests of the Hourly Employees.

70. Harris retained counsel with significant experience in handling complex collective action litigation.

71. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Westmoreland will reap the unjust benefits of violating the FLSA.

72. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

73. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Westmoreland.

74. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

75. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual collective members.

76. Among the common questions of law and fact are:

a. Whether Westmoreland rounded the Hourly Employees' clock in and clock out times for its own primary benefit and to the detriment of the Hourly Employees;

b. Whether Westmoreland required the Hourly Employees to don safety equipment and participate in production meetings, off the clock, before their shifts;

c. Whether Westmoreland paid the Hourly Employees non-discretionary bonuses and/or shift differentials;

d. Whether Westmoreland excluded the non-discretionary bonuses and/or shift differentials in calculating the Hourly Employees' regular rates of pay;

e. Whether Westmoreland failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

f. Whether Westmoreland's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

g. Whether Westmoreland's violations were willful.

77. There are many similarly situated Hourly Employees who have been denied overtime wages at the required rates—based on all remuneration—who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

78. The Hourly Employees are known to Westmoreland, are readily identifiable, and can be located through Westmoreland's business and personnel records.

### WESTMORELAND'S VIOLATIONS WERE WILLFUL

79. Westmoreland knew it employed Harris and the other Hourly Employees.

80. Westmoreland knew it was subject to the FLSA's overtime provisions.

81. Westmoreland knew the FLSA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their true regular rates of pay for all hours worked after 40 in a workweek.

82. Westmoreland knew each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because the Hourly recorded their "on the clock" hours via its timekeeping system.

83. Westmoreland knew the Hourly Employees were non-exempt employees entitled to overtime wages.

84. Westmoreland knew it rounded the Hourly Employees' hours worked for its own primary benefit and to their detriment.

85. Westmoreland knew it paid the Hourly Employees non-discretionary bonuses and shift differentials.

86. Westmoreland knew it excluded these non-discretionary bonuses and shift differentials from Harris's and the other Hourly Employees' regular rates of pay for overtime purposes.

87. And Westmoreland knew the FLSA required it to pay Harris and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

88. Westmoreland's failure to pay Harris and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

89. Westmoreland knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful off the clock policy, rounding policy, and bonus pay scheme that deprived Harris and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for hours worked after 40 in a workweek.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

90. Harris brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

91. Westmoreland violated, and is violating, the FLSA by employing non-exempt employees, such as the Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours in excess of 40 in a workweek.

92. Westmoreland's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

93. Accordingly, Westmoreland owes Harris and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

94. Because Westmoreland knew or showed reckless disregard for whether its conduct violated the FLSA, Westmoreland owes Harris and the other Hourly Employees these wages for at least the past 3 years.

95. Westmoreland is also liable to Harris and the other Hourly Employees for an amount equal to all their unpaid wages as liquidated damages.

96. Finally, Harris and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

97. Harris demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Harris, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding Westmoreland liable to the Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. Judgment awarding the Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA;

d. An Order awarding attorneys' fees, costs, and expenses to the Hourly Employees;

e. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Date: January 27, 2026

Respectfully submitted,

**JOSEPHSON DUNLAP LLC**

By: */s/ Andrew W. Dunlap*
Michael A. Josephson
Andrew W. Dunlap
Alyssa J. White
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR HARRIS & THE HOURLY EMPLOYEES**